UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

YERICEDT CATERINE GONZALEZ LUENGAS,

Petitioner,

v.

WARDEN, Otay Mesa Detention Center,

Respondent.

Case No.:  3:26-cv-00636-RBM-DDL

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**[Docs. 1, 2, 11]**

Pending before the Court is Petitioner Yericedt Caterine Gonazlez Luengas's ("Petitioner") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") (Doc. 1), Emergency Motion for Immediate Release ("TRO Motion") (Doc. 2), and Emergency Motion for Stay of Removal ("Motion for Stay of Removal") (Doc. 11).  For the reasons set forth below, the Court **DENIES** each of these filings.

## I.     BACKGROUND

### A.     Factual Background

Petitioner is a citizen of Columbia.  (Doc. 9-1 [Declaration of Deportation Officer Jesus Blanco ("Blanco Decl.")] ¶ 4.)  On June 4, 2024, Petitioner was ordered removed in absentia from the United States by an immigration judge.  (*Id.* ¶ 5.)  On or about October 10, 2025, Petitioner was physically removed from the United States to Colombia.  (*Id.*)  On November 30, 2025, Petitioner unlawfully entered the United States.  (*Id.* ¶ 6.)  She was

1

apprehended by Immigration and Customs Enforcement ("ICE") and determined to be inadmissible under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I) and taken into ICE custody. (*Id.*) On December 6, 2025, Petitioner was served with a Notice and Order of Expedited Removal. (*Id.*)

Petitioner was provided with a credible fear interview after requesting asylum and protection under the Convention against Torture. (*Id.* ¶ 7.) On December 18, 2025, the Department of Homeland Security ("DHS") concluded that Petitioner did not have a credible fear of persecution or torture. (*Id.*) On December 30, 2025, an immigration judge affirmed DHS's determination and ordered Petitioner removed to Colombia. (*Id.*)

Petitioner does not have a Colombia passport or other travel document, but has produced her "Cedula" number. (*Id.* ¶ 10.) "ICE Air Operations is able to place Colombian citizens on removal flights with their Cedula or Passport numbers without having a physical document." (*Id.*) ICE attests that "[h]ad Petitioner not filed [the] instant habeas petition, Petitioner likely would have been removed in February 2026," and that they are "aware of no reason that would prevent or delay Petitioner's removal to Colombia." (*Id.* ¶¶ 11–12.)

**B.    Procedural Background**

Petitioner, through her next friend and husband, filed the Petition and TRO Motion on February 2, 2026. (Docs. 1, 2.) Shortly thereafter, the Court set a briefing schedule. (Doc. 3.) Respondents filed their Return to Habeas Petition ("Response") on February 17, 2026. (Doc. 9.) Petitioner filed her Motion for Stay of Removal (Doc. 11) and Reply in Support of Petition for Writ of Habeas Corpus ("Reply") (Doc. 12) on February 23, 2026 and February 26, 2026, respectively.

## II.    <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may

3:26-cv-00636-RBM-DDL

be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

### III.   DISCUSSION

Petitioner argues that her detention without a bond hearing has become unreasonably prolonged in violation of the Due Process Clause. (Doc. 1 at 2; Doc. 1-2 at 1–3.) Petitioner also seeks an emergency stay of removal because she has medically fragile minor children, and her removal "would disrupt critical medical care and cause irreparable harm." (Doc. 11 at 1–2.) Respondents argue that: (1) Petitioner's claims are jurisdictionally barred by 8 U.S.C. § 1252; (2) Petitioner is subject to mandatory detention under 8 U.S.C. § 1225; and (3) even if the Court reaches the merits, Petitioner's detention has not been unreasonably prolonged. (Doc. 9 at 4–15.)

**A.   Jurisdiction**

The Court agrees with Respondents that it lacks jurisdiction over Petitioner's request for an emergency stay of removal.

> In the context of expedited removal orders under 8 U.S.C. § 1225(b)(1), federal law prohibits judicial review of "the 'procedures and policies' that have been adopted to 'implement' the expedited removal process; the decision to 'invoke' that process in a particular case; the 'application' of that process to a particular [noncitizen]; and the 'implementation' and 'operation' of any expedited removal order." . . . By statute, judicial review of such orders is limited to determinations whether the petitioner is [a noncitizen], whether the petitioner was ordered removed under 8 U.S.C. § 1225(b)(1), and whether the petitioner can prove by a preponderance of the evidence that he or she has been granted status as a lawful permanent resident, refugee, or asylee.

*Luengas v. Noem*, Case No. 26-cv-236-RSH-KSC, 2026 WL 252582, at *1 (S.D. Cal. Jan. 30, 2026) (quoting *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1155 (9th Cir. 2022) (quoting 8 U.S.C. § 1252(a)(2)(A)).

By seeking a stay of her expedited removal order, Petitioner seeks the Court's review of the "implementation and operation of any expedited removal order." The Court does

not have jurisdiction to hear such a claim.  Therefore, Petitioner's Motion for Stay of Removal (Doc. 11) is **<u>DENIED</u>**.

The Court has jurisdiction, though, to hear Petitioner's claim that her detention has become unreasonably prolonged in violation of due process.  *See Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1161–62 (S.D. Cal. 2025).  Such a challenge seeks to enforce Petitioner's "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025) (emphasis in original).

**B.      Prolonged Detention**

Respondents argue that "inadmissible arriving noncitizens seeking initial entry into the United States . . . have no due process rights 'other than those afforded by statute,'" but that even if she did, Petitioner cannot show that her detention has been unreasonably prolonged. (Doc. 9 at 10–15 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).)  Even assuming that Petitioner is entitled to due process and that the Court can decide whether her detention has become prolonged, Petitioner's claim fails on the merits.  In considering whether detention under § 1225(b) has become unreasonably prolonged, the Court has frequently applied a six-factor balancing test that considers:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Gao*, 805 F. Supp. 3d at 1111.

As to the first factor, which has been described as "the most important," *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), Petitioner has been detained for less than four months. (*See* Blanco Decl. ¶ 6.)  The Court finds that this factor weighs against Petitioner.  *Cf. Sibomana v. LaRose*, Case No.: 3:22-cv-933-LL-NLS, 2023 WL 3028093, at *4 (S.D. Cal. Apr. 20, 2023) ("In general, as detention continues past a year, courts become extremely way of permitting continued custody absent a bond hearing.");

3:26-cv-00636-RBM-DDL

*Abdul Kadir v. Larose*, Case No.: 25cv1045-LL-MMP, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable.").

Additionally, the second and sixth factors weigh heavily against Petitioner. Petitioner has already been issued an Order of Expedited Removal, and ICE attests that it would have been able to remove her to Colombia but for the Court's Order to Show Cause enjoining removal. (Blanco Decl. ¶¶ 6, 10–12.) And the fourth and fifth factors are, at most, neutral, because there really has been no delay in the removal proceedings. Petitioner was apprehended at the border on November 30, 2025. (*Id.* ¶ 6.) One week later, she was issued an Order of Expedited Removal, and one month after that, an immigration judge had affirmed DHS's determination that Petitioner did not have a credible fear of persecution or torture. (*Id.* ¶ 7.) It is only the third factor that weighs in Petitioner's favor. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). As multiple other courts have found, detention at Otay Mesa Detention Center is "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773 (citation omitted).

Five of the six factors, including "the most important one," weigh against Petitioner. Therefore, Petitioner's detention under § 1225(b) has not become unreasonably prolonged. Accordingly, the Petition (Doc. 1) and TRO Motion (Doc. 2) are **DENIED**.

### IV.   CONCLUSION

For the foregoing reasons, the Petition (Doc. 1), TRO Motion (Doc. 2), and Motion for Stay of Removal (Doc. 11) are **DENIED**. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

DATE: March 24, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:26-cv-00636-RBM-DDL